ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| UNITED ELECTRICAL SUPPLY, INC. representada por JUANA REYES LÓPEZ<br><br>Apelada<br><br>v.<br><br>JUAN POMALES POMALES Y/O CORPORACIÓN X, Y, Z<br><br>Apelante | KLAN202500365 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso núm.: SJ2021CV02817<br><br>Sobre: *Injunction* (Entredicho Provisional, *Injunction* Preliminar Y Permanente) |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón[1], la Jueza Grana Martínez y el Juez Monge Gómez

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de octubre de 2025.

El apelante, señor Juan Pomales Pomales, y la Corporación X, Y, Z solicitan que revoquemos la Sentencia en la que el Tribunal de Primera Instancia declaró ha lugar la demanda en su contra. Por su parte, la apelada United Electrical Supply Inc., presentó su oposición al recurso. Los hechos esenciales para comprender la determinación que hoy tomamos son los siguientes.

**I**

La parte apelada presentó una demanda de *injunction* contra la parte apelada. United solicitó la detención inmediata de una construcción realizada por la parte apelante que invadía su propiedad. Además, solicitó la remoción del relleno y asfalto que depositó sobre su verja. Su representación legal adujo que la obra ponía su verja en inminente peligro de derrumbe e impedía el flujo natural de las aguas. La apelada alegó que presentó una querella en la Oficina de Permisos en el año 2018 porque el apelante demolió

---

[1] Mediante la Orden Administrativa OATA-2025-068, se designó a la Hon. Sol de Borinquen Cintrón Cintrón en sustitución del Hon. Félix Figueroa Cabán.

dos estructuras, aumentó el nivel de su predio con relleno y convirtió la verja de la colindancia en un muro, sin los correspondientes permisos. Igualmente, adujo que en febrero de 2020 tuvo que acudir al tribunal para que el apelante no continuara los trabajos de relleno y construcción. No obstante, alegó que el apelante continúa usando la verja como muro de contención al punto de inclinarla varios grados hacia su propiedad. La apelante reclamó; (1) la celebración de una vista a la brevedad, (2) la demolición de la estructura construida ilegalmente, (3) la verja no sea usada como pared de fuerza o estructural, (4) la construcción de un muro de contención a costa del apelante, (5) la expedición de un *injunction* preliminar y permanente ordenando al apelante a desistir del uso indebido de terreno ajeno, (6) veinte cinco mil dólares ( $25,000) por los daños a la propiedad y los que podría causar a terceros y, (7) el pago de las costas, gastos y honorarios en una cantidad no menor de tres mil dólares ($3,000).[2]

El apelante adujo que la parte apelada varió la topografía de su terreno antes de que él adquiriera la propiedad. Su representación legal argumentó que la parte apelada ocasionó que el terreno del apelante quedara más alto y que construyó el muro de contención para evitar que la propiedad colindante cediera a la suya. El apelante presentó una reconvención en la que alegó que la apelada tenía un patrón de persecución y de alegaciones infundadas en su contra que le impedía disfrutar su propiedad, vivir en paz y en armonía con sus vecinos y hacer negocios de forma pacífica. Su representación legal pidió una indemnización de $25,000.00 por los daños y perjuicios ocasionados por la parte apelada.[3]

El TPI realizó la vista de interdicto preliminar y permanente. La apelada presentó los testimonios de Steve Pichardo, el ingeniero Jiménez Quiñonez y la señora Juana Reyes López. Su prueba

---

[2] Véase Apéndice del recurso, página 21.
[3] Id, página 27.

documental consistió en; (1) la querella que presentó en el Municipio de San Juan, (2) fotos de los trabajos de asfalto y relleno y de las escorrentías, (3) el informe forense, (4) cartas del Municipio de San Juan, (5) sus escrituras y resolución corporativa. Por su parte, el apelante ofreció su testimonio y presentó la Resolución del TPI del 19 de febrero de 2020 y fotos.

El foro primario determinó los hechos a continuación. Durante el año 2018 la apelada presentó una querella contra el apelante en la Oficina de Permisos del Municipio Autónomo de San Juan. El 2 de mayo de 2018, el municipio notificó que **el relleno aumentó el nivel del predio y convirtió la verja en un muro de contención.** El agua baja desde la propiedad del demandado hasta el frente del negocio de United Electrical y trae el particulado proveniente de la avenida o de la calle. El terreno del apelante es más alto que el de la parte apelada. El ingeniero Antonio Jiménez observó residuos de erosión en el terreno de la parte apelada y en la acera frente a la propiedad del apelante. El perito no observó una inclinación que atentara contra la seguridad de la parte apelada y encontró que la inclinación medida estaba dentro de los parámetros permitidos. El apelante obtuvo el permiso de demolición, luego de presentada la querella. El municipio desestimó la querella sin perjuicio.[4]

El TPI desestimó la demanda de *injunction* porque el perito de la apelada no observó una inclinación que pusiera en riesgo su seguridad. Según el TPI, el perito de la parte apelada tampoco encontró problemas en los puntos de las colindancias y reconoció que la inclinación estaba dentro de los parámetros permitidos. El foro primario hizo hincapié en que el interdicto preliminar y permanente van dirigidos a evitar un daño inminente y la parte apelada no demostró la existencia de un daño de tal magnitud. El

---

[4] Véase Sentencia, apéndice del recurso, páginas 1 a 18.

foro primario reconoció que el apelante tenía un permiso de construcción para llevar a cabo la obra, que no había sido impugnado. Dicho foro advirtió que los daños no procedían en el recurso de *injunction*, cuando existe otro remedio disponible en ley. Por último, resolvió que la controversia relacionada a las escorrentías de las aguas debía atenderse en un procedimiento de daños y perjuicios. El 1 de julio de 2022 el Tribunal de Primera Instancia dictó una Sentencia Parcial en la que desestimó la causa de acción de *injunction*. No obstante, ordenó la reasignación de la reclamación por daños a una sala de asuntos ordinarios.[5]

United apeló la Sentencia Parcial. El Tribunal de Apelaciones confirmó que no procedía el *injunction*. No obstante, no avaló la conclusión de que el permiso expedido el 18 de marzo de 2021, autorizó al apelante a construir la obra en controversia. El Tribunal de Apelaciones advirtió que ese permiso se presentó luego de la vista de interdicto y no fue confrontado por un testigo que abundara sobre su contenido. Fue enfático en que el TPI no tenía los elementos para concluir que la construcción autorizada, era la que estaba en controversia. Por eso resolvió que el foro primario incidió al concluir que el permiso que el apelante presentó el 28 de marzo de 2022 autorizó la construcción de la obra en controversia.[6]

Por otro lado, el Tribunal de Apelaciones advirtió que, del texto de la Sentencia Parcial, parecía que el TPI determinó que solamente quedaban por adjudicar los daños. El Tribunal de Apelaciones aclaró que el TPI únicamente adjudicó la improcedencia del *injunction*. Este tribunal advirtió que existían planteamientos que debían adjudicarse en un juicio ordinario, porque requerían el descubrimiento de prueba. El 8 de mayo de 2023, el Tribunal de Apelaciones modificó la Sentencia Parcial del foro primario y ordenó que las restantes alegaciones de la parte apelada se atendieran en

---

[5] Véase Sentencia Parcial, apéndice del recurso, páginas 30 a 38.
[6] Véase KLAN202200654, apéndice del recurso, pagina 39.

un proceso ordinario, incluyendo si el permiso aludido autorizó la edificación en controversia.

El TPI realizó un juicio ordinario. La apelada presentó el testimonio pericial del ingeniero Antonio J Jiménez Quiñones y los testigos Steve Pichardo Reyes y Juana Reyes López. El apelante, Juan R. Pomales Pomales presentó su propio testimonio. El foro primario evaluó la prueba y determinó los hechos siguientes. El edificio donde opera la apelada se construyó en el año 2004. El apelante es dueño y poseedor de la propiedad colindante con la propiedad de la apelada. Durante el año 2018 el apelante demolió una estructura residencial de dos plantas sin el correspondiente permiso. La apelada presentó una Querella en la Oficina de Permisos del Municipio de San Juan, en la que alegó que la demolición y el depósito de relleno que hizo el apelante impactaron su verja. El 7 de diciembre de 2018 el Municipio presentó una petición en el Tribunal de Primera Instancia identificada con el Número de caso SJ2018CV10590.[7]

Otros hechos que constan en la sentencia son los que exponemos a continuación. El 2 de enero de 2019 el Municipio de San Juan emitió el permiso que autorizó al apelante la demolición de una estructura residencial de dos plantas de hormigón. El permiso no autorizó trabajos de movimiento y relleno de terreno, ni otras obras o trabajos adicionales a la demolición de la estructura de hormigón. El 1 de febrero de 2019 el Municipio solicitó desistimiento sin perjuicio. Sin embargo, se reservó el derecho a presentar un recurso de *injunction* estatutario, en caso de que el apelante comenzara algún tipo de construcción u obra. El Municipio expresó en su solicitud que; (1) el permiso de demolición aprobado el 2 de enero de 2019 y notificado el 10 de enero de 2019, estaba circunscrito a las estructuras demolidas y, (2) quedaba pendiente la

---

[7] Véase Sentencia, apéndice del recurso, página 3, determinaciones de hecho 3, 6-10.

alegación sobre el relleno de terreno que convirtió la verja en un muro de contención. La moción de desistimiento se presentó previo a la celebración de una vista y sin que el tribunal ordenara la paralización. El 5 de febrero de 2019 el TPI dictó sentencia de desistimiento con perjuicio. La apelada no participó de los procesos judiciales tramitados por el municipio en ese caso.[8]

El apelante realizó trabajos de relleno y depósito de asfalto, luego de demoler la estructura. Los terrenos de ambas partes estaban en el mismo nivel antes de que el apelante realizara esos trabajos. El señor Pichardo le expresó su preocupación y oposición a la altura de los trabajos de relleno, porque impactaban la verja de la colindancia. Aunque el apelante le dijo que atendería el asunto, continuó los trabajos hasta sobrepasar el limité de la propiedad de la apelada. El apelante subió el nivel del terreno, depositó relleno contra la pared de mampostería y sobrepasó el límite de su propiedad. El relleno del terreno del apelante excedió el metro de altura en el centro de la verja de la colindancia. El apelante colocó asfalto de un grosor de 2 a 4 pulgadas. El relleno y la capa de asfalto estaban sobre la línea de colindancia y directamente contra la verja de mampostería de la apelada. La pared de mampostería no fue contemplada estructuralmente como un muro de retención, sino como una verja de colindancia. Su resistencia al vuelo era mínima porque no fue provista de una fundación. Las columnas tampoco eran suficientes para considerarla un muro de contención, no estaba empañetada y no tenía un sistema de impermeabilización. El apelante dirigió las aguas de escorrentía superficiales hacia la pared de mampostería, sin un sistema de drenaje.[9]

Los hechos siguientes forman parte de la sentencia apelada. El señor Pichardo se percató en el año 2020 de una inclinación en

---

[8] Véase Sentencia, apéndice del recurso, páginas 4-5, y determinaciones de hecho 11-15.
[9] Véase Sentencia, apéndice del recurso, página 4 y 5, determinaciones de hecho 16 a 27.

la verja de colindancia El agua bajaba desde la propiedad del apelante y discurría hasta el frente del negocio de la apelada. El 4 de febrero de 2020 la apelada presentó una reclamación judicial al amparo de la Ley sobre Controversias y Estados Provisionales del Derecho. No obstante, fue archivado porque la controversia no era susceptible de adjudicarse en la Sala Municipal. El 18 de marzo de 2021 la Oficina de Permisos del Municipio de San Juan expidió un permiso de construcción al apelante para el proyecto descrito como Asunto Uso Comercial- Oficinas de alto volumen de clientes (Oficina para tramitar cierre de compra de autos). Descripción Construcción de Nueva Estructura de 548.98 p.c. 51.02 m.c. con catorce (14) espacios de estacionamiento. El permiso indicaba *nullim* en la sección sobre volumen a rellenar o excavar. La tierra y el asfalto no constaban como los materiales utilizados. El hormigón armado y los bloques son los materiales utilizados. El permiso no incluyó el movimiento de tierra, el depósito de relleno y/o asfalto ni la pavimentación. No obstante, constaba que el permiso no legalizaba la construcción de obras, ni autorizaba las construidas y sujetas a permiso.[10]

El TPI también determinó los hechos siguientes. La apelada contrató al ingeniero Antonio Jiménez Quiñones para que realizara estudios forenses de agrimensura e ingeniería. El 10 de febrero de 2021 emitió su Reporte Forense de Hallazgos en el que concluyó que; (1)los trabajos de relleno y pavimentación invadían la propiedad de la apelada, (2) la pared de mampostería en la propiedad de la apelada era una verja de colindancia que no se contempló como un muro de contención, (3) a la fecha del informe, la pared de mampostería tenía una inclinación dentro de los parámetros de tolerancia, (4) la resistencia al vuelo de la pared de mampostería es mínima porque no fue provista de una fundación, (5) los trabajos de

---

[10]Véase Sentencia, apéndice del recurso, página 5 y 6, determinaciones de hecho 28 a 35.

relleno y pavimentación no consideraron los requisitos generales básicos mínimos de diseño para lidiar con las aguas de escorrentías, (6) no se proveyó un sistema de drenaje para considerar presiones hidrostáticas, (8) las aguas de escorrentías se dirigieron a drenar hacia la parte atrás de la pared de mampostería, (9) la pared de mampostería no fue provista con una terminación de empañetado ni un sistema de impermeabilización, (10) no se establecieron medidas adecuadas para el manejo de aguas de escorrentías en la propiedad del apelante y atender la erosión y socavación.[11]

Otros hechos que el TPI determinó probados son los que exponemos a continuación. Las aguas de escorrentías ocasionadas por la lluvia o por el lavado de vehículos, provenientes de la propiedad del apelante, chocaban con el muro de mampostería de la apelada. Estas aguas discurrían por el muro y se dirigían al frente y en la acera del negocio de la apelada. El apelante construyó un muro frente a su propiedad que no atendió el problema de las aguas de escorrentías, ni de impermeabilidad en la verja de la colindancia. Las aguas de escorrentías discurrían hacia la propiedad de la apelada con todo tipo de partículas como tierra, piedra, basura y brea, previo a que el apelante construyera el muro. Luego de su construcción, disminuyó el flujo de partículas. No obstante, las aguas de lluvia y de los productos que el apelante utilizaba como el jabón o aceite continúan discurriendo hacia la propiedad de la apelada. Las aguas que permean la capa de asfalto traspasaban la verja de colindancia hacia la propiedad de la apelante debido al encuentro entre la verja y el suelo. Además, provocaban humedad en la superficie de la pared de la verja colindante. La pintura estaba afectada en el área de las columnas que tenían la parte inferior calcificada. El ingeniero Jiménez Quiñónez visitó las facilidades de la apelada luego de rendir su informe y observó que el flujo de

---

[11] Véase Sentencia, apéndice del recurso, página 6, determinaciones de hecho 36 a 37.

partículas y las aguas de escorrentías continuaban discurriendo hacia el frente y la acera de la apelada. El ingeniero recomendó que el apelante; (1) no utilizara la pared de mampostería de colindancia como un muro de contención, (2) construyera a su costa un muro de contención en la colindancia, si el apelante deseaba mantener el relleno y pavimento asfáltico, (3) contratara los servicios de un profesional certificado para que diseñara una estructura de retención y un sistema de manejo de aguas de escorrentías y tramitara todos los permisos necesarios regidos por ley.[12]

Por último, consta en la sentencia los hechos siguientes. El apelante tenía un pino en su propiedad, realizaba trabajo de limpieza y mecánica de autos y estacionaba autos en el área cercana a la verja de colindancia de la apelada. El Reglamento Conjunto de la Junta de Planificación exime de un permiso las obras de construcción cuya elevación no exceda un metro de altura, desde el nivel natural del terreno, y que no representan un riesgo estructural, no conllevan construcción o instalación de vigas, varilla, columnas aleros elementos arquitectónicos, estructurales, soporte carga o sostén. Además, establece que toda persona o entidad que pretenda depositar relleno como parte de una actividad independiente o de un proceso de urbanización, deberá estar autorizado por la OGPe y endosado por el DRNA para garantizar que no se alteren las escorrentías, desvíen el cauce de cuerpos de agua, obstruyan sumideros, afecten recursos naturales o provoquen inundaciones.

El foro primario redujo las controversias a determinar si el apelante:

1) tenía permiso para realizar las obras de relleno y pavimentación asfáltica,

2) utilizó la pared de la apelada como un muro de contención,

3) tenía que demoler la obra pegada a la pared de la apelada,

---

[12] Véase Sentencia, apéndice del recurso, páginas 7 y 8, determinaciones de hecho 38 a 44.

4) tenía que construir un muro de contención y,

5) tenía que corregir la situación de escorrentía.

Además, advirtió que debía resolver, si procedía la reclamación por daños de la apelada y que atender la reconvención.

El TPI dio credibilidad a la abundante prueba documental, pericial y testifical de la parte apelada, no controvertida por el apelante. Fue enfático en que el apelado no tenía permiso para realizar obras de relleno y pavimentación asfáltica. Concluyó que la apelada probó que el apelante hizo trabajos de demolición, asfaltó y rellenó en la colindancia contra su verja. El foro no dudó que la parte apelada le notificó su oposición al apelante. Igualmente, se convenció de que el apelante no tomó las medidas para capturar las aguas de las escorrentías agravadas por la elevación del terreno y los trabajos en su propiedad. El foro primario no dio credibilidad al apelante porque (1) se limitó a señalar que no rellenó el terreno, sino que lo niveló algunas pulgadas, (2) declaró, contrario a la evidencia presentada, que las querellas de la apelada ocasionaron la detención de su proyecto y lo obligó a pagar renta.

Por otro lado, el TPI dio credibilidad al informe y el testimonio del perito de la parte apelada. Según consta en la sentencia, el perito concluyó que la pared de la parte apelada no podía usarse como un muro de contención, porque no cumplía con los requisitos estructurales para ese uso. Concluyó el foro del informe y testimonio pericial que la pared era realmente una verja de mampostería. Determinó que el apelante no pudo controvertir esa prueba. Por su parte, la parte apelada convenció al TPI de que el apelante; (1) subió el nivel del terreno en su propiedad, (2) depositó relleno contra la pared de mampostería, (3) sobrepasó el límite de su propiedad hasta llegar sobre la línea de colindancia y directamente contra la verja de la demandante y, (4) utilizó la pared de la parte apelada como muro de contención.

El foro primario ordenó la demolición, conforme a la credibilidad que le mereció el testimonio del señor Pichardo. El testigo declaró que le comunicó al apelante su oposición, pero continuó la obra y sobrepasó el límite de su propiedad. El TPI acogió las recomendaciones del perito de la parte apelada y ordenó al apelante construir un muro de contención, si su intención era mantener el relleno y la pavimentación asfáltica. Igualmente, le ordenó solucionar el problema de escorrentía, ocasionado por las aguas que dirigió hacia la pared de mampostería, sin drenaje y sin medidas para atender la erosión y socavación. Reconoció el derecho de la parte apelada a presentar una reclamación de daños. Según el foro las acciones del apelante ocasionaron que las aguas de escorrentías chocaran con el muro de mampostería y se dirigieran frente del negocio de la parte apelada. El tribunal se convenció de que el apelante creó una situación de riesgos para los clientes y empleados de la parte apelada. Además, dio por hecho que los trabajos que realizó el apelante afectaron la verja de la parte apelada, crearon humedad, dañaron la pintura y ocasionaron calcificación en la parte inferior.

Por último, denegó la reconvención, porque el testimonio del apelante fue impreciso e inconsistente. El TPI no creyó que las querellas contra el apelante le impidieron operar su negocio. El foro primario señaló que el apelante identificó ese periodo como el año 2022, pero la evidencia demostró que para esas fechas estaba realizando trabajos de construcción en la propiedad. Enfatizó que el apelante, admitió que estaba realizando una demolición sin permiso, para la fecha en la que el municipio presentó la querella. El foro primario dio credibilidad al testimonio de la parte apelada. Esta declaró que no participó de los procesos conducidos por el Municipio. Según el TPI, el Municipio desistió sin perjuicio del pleito,

porque el apelante informó que solicitó el permiso de demolición para legalizar la obra.

El TPI dictó la sentencia apelada en la que ordenó al apelante; (1) realizar la remoción y o demolición de aquella parte de la obra de relleno y capa asfáltica que sea necesaria para construir una estructura de retención y la instalación de un sistema de drenaje, (2) realizar trabajos de impermeabilización de la pared de mampostería, (3) construir una estructura de retención entre la propiedad de ambas partes, contra la que descansen el relleno y la capa asfáltica,(4) instalar un sistema de drenaje para el manejo de las aguas de escorrentías, (5) tener los permisos necesarios para realizar las obras ordenadas y, (6) pagar a la parte apelada una compensación de $7,000.00 por daños.

Inconforme, el apelante presentó este recurso en el que alega que:

1) Erró el Honorable Tribunal de Primera Instancia, Sala Superior de San Juan, al dictar Sentencia y determinar que el demandado no tiene permiso para realizar las obras de relleno y pavimentación asfáltica que llevo a cabo, utilizando los siguientes hechos como del Permiso de Demolición expedido por el Municipio de San Juan Número 180P-402DT-SJ de la estructura de hormigón enclavada en su propiedad nada dispone sobre trabajos de relleno (Hecho 11), en el Permiso de Construcción expedido por el Municipio de San Juan bajo el Número 2020-313834-PCOC 007587 no se identifica tierra y asfalto, no incluye trabajos de movimiento de tierra, relleno y o asfalto pavimentación (Hecho 34) en la sección sobre volumen a rellenar o excavar, el referido permiso de construcción indica NullM3 en la segunda hoja de Permiso de Construcción en la sección de Materiales se identifican los siguientes hormigón armado y bloques.

2) Erró el Honorable Tribunal de Primera Instancia, Sala Superior de San Juan, al dictar Sentencia y concluir que el demandado utilizó la pared de la parte del demandante como muro de contención.

3) Erró el Honorable Tribunal de Primeras Instancia, Sala Superior de San Juan, al dictar Sentencia que procede la demolición de la obra que sobrepasa el límite de la propiedad de la parte demandante.

4) Erró el Honorable Tribunal de Primera Instancia, Sala Superior de San Juan al dictar Sentencia que procede la construcción de una estructura de retención diseñada por un profesional certificado.

5) Erró el Honorable Tribunal de Primera Instancia, Sala Superior de San Juan al dictar Sentencia, que procede la corrección de aguas de escorrentías.

6) Erró el Honorable Tribunal de Primera Instancia, Sala Superior de San Juan al dictar Sentencia que procede la reclamación de daños de la parte demandante por la suma de $7,000.00 y el pago de las costas incurridas por esta en la tramitación del caso.

7) Erró el Honorable Tribunal de Primera Instancia, Sala Superior de San Juan al dictar Sentencia declarando la imposición de $3,000.00 de honorarios de abogado por entender que la parte demandada fue temeraria en el trámite de la reclamación.

## II

LA DEFERENCIA DE LA APRECIACIÓN DE LA PRUEBA DEL TRIBUNAL DE PRIMERA INSTANCIA

La norma reiterada en nuestro ordenamiento jurídico es honrar deferencia a la apreciación de la prueba, adjudicación de credibilidad y determinaciones de hecho del Tribunal de Primera Instancia. La llamada norma de la deferencia judicial está predicada en que los jueces de las salas de instancias son las que están en mejor posición para aquilatar la prueba testifical. Esto porque los jueces de instancia tienen la oportunidad de oír, ver y apreciar el comportamiento de los testigos mientras prestan su testimonio. No obstante, la norma de la deferencia no es absoluta, no puede aplicarse, cuando la apreciación del foro primario no represente el balance más justiciero y jurídico de la totalidad de la prueba. Además, tenemos la responsabilidad ineludible de intervenir cuando la evaluación del foro primario se distancia de la realidad fáctica o es inherentemente imposible o increíble. Ahora bien, nuestra intervención no se favorece ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión. Por último, advertimos que los foros apelativos tienen la facultad de adoptar su propio criterio, cuando las conclusiones de hecho están fundamentadas en prueba pericial o documental. En cuanto a dicha prueba, los tribunales incluso podrán descartar dicha prueba, aunque sea técnicamente correcta. S*antiago Ortiz v. Real Legacy et al,* 206 DPR 194, 219 (2021). Tan reciente como en *Peña Rivera v. Pacheco Caraballo,* 213 DPR 1009, 1024-1025 (2024), el Tribunal Supremo de Puerto Rico ratificó la

norma de la deferencia judicial a la decisión del Tribunal de Primera Instancia. La decisión ratifica que la tarea de adjudicar credibilidad y determinar lo que ocurrió realmente en un caso, depende en gran medida de la exposición del juez o la jueza a la prueba y ese trabajo lo realiza el juez de instancia.

El tribunal explicó en *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 779 (2022), cuando el juzgador incurre en pasión, prejuicio o parcialidad. El juzgador incurre en esa conducta, cuando actúa movido por inclinaciones personales de tal intensidad que adopta posiciones preferenciales o rechazos respecto a las partes o sus causas que no admiten cuestionamientos, sin importar la prueba e incluso antes de que sea sometida. Por su parte, el error manifiesto ocurre cuando el foro apelativo queda convencido de que se cometió un error, a pesar de que hay evidencia que sostiene las conclusiones de hecho del tribunal de instancia. No obstante, existe un conflicto entre las conclusiones y el balance más racional justiciero y jurídico de la totalidad de la evidencia recibida. El error manifiesto se comete, cuando la apreciación de la prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble. La facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que a la luz de la prueba admitida no existe base suficiente que apoye su determinación.

<u>ACCIONES POR DAÑOS Y PERJUICIOS</u>

Los actos y omisiones en los que intervenga culpa o negligencia acarrean responsabilidad civil extracontractual. El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia está obligado a reparar el daño causado. El demandante que reclama daños está obligado a establecer; (1) la existencia de un daño real, (2) el nexo causal entre el daño y la acción u omisión culposa del demandado y (3) el acto u omisión tiene que ser culposo

o negligente. La culpa o negligencia es la falta del debido cuidado y consiste en no anticipar ni prever las consecuencias racionales de un acto o de la omisión de un acto, previsto por una persona prudente en las mismas circunstancias. Además, es necesario que exista un nexo causal entre el acto culposo o negligente y el daño sufrido. La causa no es toda condición sin la cual no se hubiese producido el resultado, sino la que ordinariamente lo produce. *Pérez et al v. Lares Medical et al.*, 207 DPR 965, 976 (2021). Véase también artículo 1802, 31 LPRA sec. 5141, hoy derogado.[13]

### AGUAS DE ESCORRENTÍAS

El propietario de un edificio está obligado a construir su techo o cubierta de forma tal que las aguas pluviales caigan sobre su propia finca y no en la del vecino. Aun cuando caigan en su propia finca tiene la obligación de recogerlas, para que no perjudiquen al predio contiguo, ni a los usuarios de las calles o sitios públicos. Artículo 801 del Código Civil de 2020, 31 LPRA sección 8064 y Artículo 522 del Código Civil de 1930, 31 LPRA sección 1791. Por su parte, los predios inferiores están obligados a recibir las aguas que descienden de forma natural de los predios superiores, así como la tierra y piedra que arrastran. No obstante, el dueño del predio superior no podrá hacer trabajo que lo agraven. El dueño del predio inferior tampoco puede hacer trabajos que lo impidan. Artículo 802 del Código Civil de 2020, 31 LPRA sección 8065, Artículo 488 del Código Civil de 1930, 31 LPRA sección 1711.

### EDIFICANTE DE MALA FE

La persona que edifica de mala fe en suelo ajeno pierde lo edificado, sin derecho a indemnización. Artículo 763 del Código Civil de 2020, 31 LPRA sección 7989, Artículo 298 de Código Civil de 1930, 31 LPRA sección 1165. El dueño del suelo en el que se edificó

---

[13] Los hechos que nos corresponde atender ocurrieron durante la vigencia del derogado Código Civil de 1930 y del actual Código Civil de 2020. Por esa razón, es necesario analizar las controversias existentes conforme al derecho establecido en ambos códigos.

de mala fe tiene derecho a exigir la demolición de la obra o restablecer las cosas a su estado primitivo a costa de la persona que edificó. Artículo 764 del Código Civil de 2020, 31 LPRA sección 7990, Artículo 299 del Código Civil de 1930, 31 LPRA sección 1166.

## LA MEDIANERÍA

La medianería es el conjunto de derechos y obligaciones que dimanan de la existencia y el disfrute en común de una pared cerca, vallado u otro elemento divisorio que tienen los dueños de los edificios o predios contiguos. Artículo 860 del Código Civil de 2020, 31 LPRA sección 8241. Se presume la medianería en los muros, verjas, zanjas y setos vivos situados entre dos predios, salvo título o signo exterior en contrario. Artículo 863 de 2020, 31 LPRA sección 8244 Artículos 508 y 510 del Código Civil de 1930, 31 LPRA secciones 1752 y 1754. La servidumbre de medianería no existe, cuando toda la pared se construyó sobre el terreno de una de las fincas. Artículo 864 del Código Civil de 2020, 31 LPRA sección 8245, Artículo 509 del Código Civil de 1930, 31 LPRA sección 1753.

## HONORARIOS DE ABOGADO

La Regla 44.1 de Procedimiento Civil, 32 LPRA Ap. V, faculta a los tribunales a imponer el pago de honorarios de abogado, a cualquier parte o su representación legal que haya sido temeraria. La temeridad pretende disuadir la litigación frívola, compensar los gastos incurridos por la parte que no ha sido temeraria y fomentar la transacción de los pleitos. La imposición de honorarios e intereses por temeridad es imperativa una vez se determina temeridad. Los honorarios por temeridad sancionan esa conducta en cualquier tipo de acción judicial. El concepto temeridad no está expresamente definido en las Reglas de Procedimiento Civil. El Tribunal Supremo de Puerto Rico ha expresado que el concepto temeridad es amplio y conlleva aquellas actuaciones de un litigante que (1) llevan a un pleito que pudo evitarse, (2) provocan la prolongación indebida del

trámite judicial y (3) obligan a la otra parte a incurrir en gastos innecesarios para hacer valer su derecho. Un litigante perdidoso actúa con temeridad, cuando su terquedad, testarudez. obstinación, contumacia, empecinamiento, impertinencia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte a asumir innecesariamente las molestias gastos e inconvenientes de un pleito. *SLG González-Figueroa v. SLG et al.,* 209 DPR 138, 145, 147-149 (2022).

La facultad de imponer honorarios e intereses por temeridad es una de las mejores armas que tienen los tribunales para gestionar eficientemente los procedimientos judiciales el tiempo y la administración de la justicia y para proteger los litigantes de la dilación y los gastos innecesarios. La temeridad es contraria a los principios de eficiencia en la administración de la justicia y el buen funcionamiento de los tribunales. La sanción establecida en la Regla 44 de Procedimiento Civil, *supra,* es un mecanismo poderoso para garantizar una solución, justa, rápida y económica de todo procedimiento. Sin embargo, no es temerario quien plantea asuntos complejos y novedosos, sobre los que no existen precedentes vinculantes o cuando existe alguna desavenencia honesta sobre el derecho aplicable. Por el contrario, es claramente temeraria, la parte que insiste contumazmente en alegar algo sin ninguna prueba fehaciente que lo apoye y que niega los hechos que le constan o son de fácil corroboración y que dilata los procedimientos judiciales para no responder por sus obligaciones. Así también una parte es temeraria cuando niega totalmente su responsabilidad, a pesar de que sabe o debió saber que su negligencia causó o contribuyó al daño, y que obliga a la demandante a litigar extensamente el caso, especialmente en lo que respecta a la negligencia. La temeridad también la comete la parte que entiende que la cuantía reclamada es exagerada, pero no acepta con franqueza la responsabilidad por

sus actos y se limita a litigar los daños reclamados y su valorización. De esa manera asume voluntariamente el riesgo y las consecuencias de litigar un caso en el que la negligencia surge prima facie. La imposición de honorarios de abogado a la parte temeraria descansa en la sana discreción judicial Los tribunales apelativos solo podrán variarla si existe un abuso de discreción. *SLG González-Figueroa v. SLG et al.,* supra, págs. 149-150.

<u>REGLAMENTO CONJUNTO PARA LA EVALUACIÓN Y EXPEDICIÓN DE PERMISOS RELACIONADOS AL DESARROLLO, USO DE TERRENO Y OPERACIÓN DE NEGOCIOS O REGLAMENTO CONJUNTO</u>

El Tomo III del Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terreno y Operación de Negocios, Reglamento número 9081 de 8 de mayo de 2019, tiene el propósito de detallar el sistema unificado de Información relacionado al desarrollo y uso de terrenos, conforme a la política pública esbozada en la Ley 161-2009, *supra*, a través de normas claras, objetivas y uniformes para el manejo ágil y eficaz de procesos, consolidando en un solo lugar, en un orden lógico y sin duplicación innecesaria, todas las reglas aplicables a los mismos. Regla 1.6.2. Entre otros, regula los permisos para desarrollos y negocios. La sección 3.2.4 (b)(6) exime de un permiso de construcción a las obras que no forman parte de otra obra o desarrollo mayor, cuya elevación no exceda el metro de altura, medido desde el nivel natural del terreno y que no represente un riesgo estructural. La sección 3.2.4 del Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terreno y Operación de Negocios, Reglamento número 9233 de 2 de diciembre de 2020, contiene la misma excepción.[14]

---

[14] Ambos Reglamentos fueron declarados nulos por el Tribunal Supremo de Puerto Rico. *Martínez Fernández et al. v. OGPe et al.,* 212 DPR 285 (2023). No obstante, la declaración de nulidad sería prospectiva. Es decir que, la reglamentación antes citada estaba vigente a la fecha de los hechos por lo que es pertinente en la discusión que nos ocupa. Sin embargo, hacemos constar que el Reglamento Conjunto número 9473 del 16 de junio de 2023 mantiene la misma disposición en su sección 3.2.4.2 (a) (1).

**III**

El apelante alega que no necesitaba permiso para rellenar y tirar asfalto en su terreno, porque los trabajos realizados no excedieron el metro de altura como establece el Reglamento Conjunto.

El TPI no cometió el primer señalamiento de error, porque la apelada demostró que los trabajos del apelante excedieron el metro de altura y por consiguiente la necesidad de un permiso. El foro primario dio plena credibilidad al testimonio del señor Steve Pichardo. El testigo declaró que, entre el relleno, el piso y la brea, había más de un metro de altura. Fue enfático en que midió y había más de un metro de altura e identificó en fotos el área de esa medida. El testigo identificó el medio como el área que sobrepasaba el metro y medio de altura. El señor Pichardo declaró que ambas propiedades estaban al mismo nivel, antes de que el apelante depositara el asfalto y el relleno en su predio. El testigo explicó como las fotos evidenciaban la existencia de esa altura.[15]

El apelante no controvirtió testimonio de Pichardo. Su testimonio demostró que necesitaba obtener un permiso, porque los trabajos de relleno y asfalto sobrepasaban el metro de altura. El apelante no tenía el permiso requerido para depositar asfalto y relleno en su propiedad. El 2 de enero de 2019 el Municipio de San Juan expidió un permiso de demolición a favor del apelante. El permiso legalizó la demolición que el apelante realizó sin la autorización requerida. El apelante legalizó la obra, luego de que la apelada se querelló en su contra. No obstante, el permiso de demolición no lo autorizó a depositar asfalto ni relleno en su propiedad. El 18 de marzo de 2021 el Municipio de San Juan expidió un segundo permiso a favor del apelante en el que autorizó la construcción de una nueva estructura y catorce espacios de

---

[15] Páginas 147-153 de la transcripción de la prueba oral.

estacionamiento. Sin embargo, ese permiso tampoco autorizó la tirada de asfalto y relleno. Por el contrario, consta en el permiso que no se estaba legalizando la construcción de obras, ni autorizando las construidas y sujetas a un permiso. Ninguno de los permisos presentados como evidencia, autorizaron al apelante a hacer esas obras. No obstante, aun en el supuesto de que el apelante no necesitara un permiso no significa que está exento de responsabilidad, si se demuestra que actuó de forma culposa o negligente y que ocasionó daños a la apelada.

La representación legal de la apelante cuestiona la credibilidad del perito de la parte apelada, porque alega que no probó el uso la pared de United como muro de contención. El TPI no cometió el segundo señalamiento de error. El perito explicó la diferencia entre un muro de retención y una verja de colindancia. Según explicó el muro de retención se diseña estructuralmente para retener algo, como la tierra o el agua y dio el ejemplo una represa. El testigo aclaró que la verja de colindancia era un elemento arquitectónico que definía la división entre dos propiedades y que no estaba necesariamente diseñada para retener algún tipo de material. Además, explicó que la verja de colindancia solamente era diseñada para aguantar vientos huracanados, mientras que el muro de contención era diseñado para contener al lado opuesto, cualquier tipo de material que le creara presión.[16]

El perito de la apelada dijo que inspeccionó la propiedad y se dio cuenta de que la pared de mampostería no cumplía estructuralmente con los requisitos de un muro de retención, y que solo se contempló como una verja de colindancia.[17] El testigo declaró que al momento de su inspección los trabajos de pavimento y relleno habían finalizado y observó que el apelante; (1) no hizo un sistema

---

[16] Páginas 47-48 de la transcripción de la prueba oral (TPO).
[17] Páginas 33, 48 -49 de la TPO.

de drenaje para considerar las presiones hidrostáticas,[18] (2) dirigió **las aguas de escorrentías superficiales a drenar a la parte trasera de la pared de mampostería, a pesar de que no contaba con las medidas adecuadas para atender la erosión y socavación.[19]** El perito dijo que la pared de mampostería no tenía un sistema de impermeabilidad y estaba totalmente expuesta, porque no fue empañetada. Según explicó la ausencia de un sistema de impermeabilización, hacía la superficie mucho más susceptible a infiltraciones de agua y a daños por erosión.[20] El testigo observó que la resistencia de la pared de mampostería era mínima, porque no fue provista de una fundación.[21] El perito concluyó que la pared no cumplía con los requisitos de un muro estructural, porque no tenía la capacidad para soportar fuerzas horizontales y recomendó, que se le quitara la presión que el apelante le estaba obligando a aguantar.[22] El ingeniero enfatizó que lo más importante era atender la sobre carga que le impuso el apelante después de su construcción y que no fue considerada en su diseño original.[23] Durante el re-directo el perito declaró que las medidas de corrección que realizó el apelante no funcionaron, porque no atendieron el problema de impermeabilidad del muro, ni de la presión del material, ni las escorrentías.[24]

El testimonio no controvertido del señor Pichardo probó que el apelante conocía desde el año 2018 donde estaba la colindancia y que se le advirtió que iba a afectar el muro de la parte apelada y a invadir su propiedad si continuaba con el relleno y depósito de asfalto. El señor Pichardo declaró que en el año 2018 le dijo al apelante dónde estaba el linde y la colindancia, antes de que terminara de rellenar. Además, declaró que le pidió que no siguiera

---

[18] Páginas 50 a 51 de la TPO.
[19] Página 51 de la TPO.
[20] Páginas 52-53 de la TPO.
[21] Página 55 de la TPO.
[22] Páginas 56-57 de la TPO.
[23] Página 58 de la TPO.
[24] Página 81 de la TPO.

subiendo su terreno, porque iba a entrar a su propiedad. Por último, dijo que le advirtió que iba a afectar la pared verja, debido a que no era un muro de contención.[25]

Los testimonios presentados por la parte apelada nos convencen de que el apelante utilizó la verja de mampostería propiedad de la parte apelada como un muro de contención, a pesar de las advertencias que le hizo el señor Pichardo. El apelante subió el nivel de su terreno, depositó relleno y una capa de asfalto contra el muro de mampostería.  Además, dirigió las aguas de escorrentías a drenar hacia el muro. El perito de la parte apelada probó que el muro no estaba preparado para recibir ninguna de esas cargas. El apelante no controvirtió el testimonio pericial sustentado con el Reporte Forense de Hallazgos y las fotos de la pared de mampostería y de los trabajos de relleno y asfalto.

El apelante cuestiona, en el tercer señalamiento de error, que el tribunal ordenara la demolición de la obra que sobrepasaba el límite de la propiedad de la parte apelada. Su representación legal sostiene que el Juez Cuevas concluyó en la Sentencia Parcial que el perito de la parte apelada no encontró ningún problema con los puntos de las colindancias. El TPI no cometió el tercer señalamiento de error. El perito de la parte apelada determinó que la colindancia sur del terreno de la parte apelada estaba definida por la alineación con el tubo de verja del muro original de mampostería identificado como punto 5 y anejo c. El testigo identificó la colindancia en fotos y concluyó que los trabajos de relleno y asfalto realizados por el apelante invadían la propiedad de la parte apelada.[26] Además, declaró que realizó una mensura de la propiedad, porque la agrimensura estaba en entredicho.[27] El perito encontró que el muro estaba totalmente dentro de la colindancia del predio de la parte

---

[25] Páginas 117 a 118 de la TPO.
[26] Página 34 de la TPO.
[27] Página 21 de la TPO.

apelada e identificó la cara exterior como la colindancia con el apelante.[28] Según explicó la alineación de la colindancia se encontraba en el área de contacto entre el muro de mampostería más alto y otro que identificó como el más bajito.[29]

El ingeniero Jiménez explicó el procedimiento que siguió para concluir que el apelante invadió la propiedad de la parte apelada. Según explicó; (1) realizó el levantamiento de campo de toda la información, (2) preparó el plano de agrimensura, (3) verificó la cabida que se emitió en el campo y trató de llevarla lo más posible a la descrita en la escritura, considerando que las demás colindancias estaban definidas,[30] (4) hizo los ajustes en el cálculo del área hasta llegar al área de la escritura, (5) determinó que el área de contacto entre las dos paredes era el tubo de verja.[31] El testimonio del perito de la parte apelada confirma las conclusiones contenidas en el Reporte Forense de Hallazgos en el que constan las deficiencias en cabida de la propiedad de la parte apelada.[32]

El apelante no pudo controvertir el testimonio pericial que demostró que invadió la propiedad de la parte apelada. Por su parte, del testimonio no controvertido del señor Pichardo puede concluirse que el apelante sabía las colindancias, porque se lo informó en el año 2018 y le advirtió que si continuaba rellenando sobrepasaría la colindancia.[33] Por consiguiente, el apelante no tiene otra alternativa que no sea demoler la obra que sobrepasa el límite de la propiedad de la parte apelada. Además, el apelante invoca la Sentencia Parcial en la que se denegó el *injunction*. No obstante, el Tribunal de Apelaciones aclaró que su determinación estaba basada, exclusivamente, en la procedencia del *injunction* y que las demás controversias debían atenderse en un proceso ordinario. Por otro

---

[28] Páginas 22 a 23 de la TPO.
[29] Páginas 30 a 33 de la TPO.
[30] Página 36 de la TPO.
[31] Página 39 de la TPO.
[32] Páginas 97 a 98 de la TPO.
[33] Páginas 117 a 118 de la TPO.

lado, el apelante cuestiona que el TPI le ordenó construir una estructura de retención diseñada por un profesional certificado. Su representación legal sostiene que la pared medianera lo único que refleja es la falta de mantenimiento.

El foro primario no cometió el error señalado, porque su decisión está basada en el testimonio no controvertido del perito de la parte apelada. El apelante parte de la premisa errónea de que los daños los ocasionó la falta de mantenimiento de la parte apelada. La prueba creída y no controvertida presentada demostró que los daños a la pared medianera fueron ocasionados por los trabajos de relleno y asfalto que realizó el apelante y por la forma en que canalizó las aguas. Según el testimonio no controvertido del perito de la parte apelada, el apelante no consideró los requisitos generales básicos mínimos de diseño para lidiar con las escorrentías de las aguas. El perito declaró que el apelante dirigió las aguas a drenar hacia la parte trasera de la pared de mampostería y que podía observarse la erosión y socavación que ocasionaban en la subbase de asfalto. Según el perito las aguas provenientes de la propiedad del apelante discurrían libremente sobre la superficie y continuaban hacia el terreno de la apelante.[34] Además, advirtió que no se proveyó evidencia sobre la intervención de un profesional certificado.[35]

El señor Pichardo identificó en las fotos el agua de las escorrentías caer hacia la entrada de su propiedad, el sucio que siempre estaba cayendo y la tierra y escombros bajando.[36] El testigo explicó que toda el agua que bajaba de la propiedad del apelante chocaba con su pared y bajaba por la esquina, donde se veía el sedimento y la tierra caer. El señor Pichardo dijo que el apelante construyó una especie de rampa donde ahora cae el agua. No obstante, declaró que no corrigió el problema porque ahora el agua

---

[34] Páginas 51 a 52 de la TPO.
[35] Página 42 de la TPO.
[36] Páginas 103 a 105 de la TPO.

cae directamente frente a su propiedad y choca con su pared.[37] Además, declaró que en las fotos evidenciaban la humedad dentro de la pared, el declive de la verja, el desprendimiento de pintura y la inclinación en la pared.[38]

El ingeniero Antonio J Jiménez Quiñones declaró que lo más correcto era quitar la presión sobre el muro, porque se aplicó una carga para la que no fue diseñado.[39] El testigo propuso como alternativas, construir un muro de contención o la eliminar el asfalto y la capa de relleno, para evitar entrar en el diseño. Página 58 de la transcripción. El perito recomendó contratar un profesional certificado competente para el diseño adecuado de la estructura de retención, en caso de que el apelante pretenda mantener el relleno y el asfalto.[40]

La representación legal del apelante cuestiona que el TPI le ordenara corregir la corriente de las aguas. El apelante argumenta que no tiene un techo o cubierta que tire aguas pluviales a la finca de la parte apelada y que la construcción no varió el curso de las aguas que discurren naturalmente. El apelante se equivoca porque el perito de la parte apelada probó que varió el curso natural de las aguas del tiempo y las utilizadas para lavar vehículos. El apelante dirigió las aguas de su propiedad hacia la parte trasera de la pared de mampostería. El señor Pichardo declaró que el agua bajaba con jabón todos los días, porque todos los días lavaban autos.[41]

El apelante cuestiona que el TPI le ordenara pagar una indemnización por daños. Su representación legal aduce que los daños que reclama la parte apelada son parte del deterioro natural ocasionado por el paso del tiempo y por la falta de mantenimiento. El apelante cuestiona la cantidad de siete mil dólares ($7,000.00)

---

[37] Página 107 de la TPO.
[38] Páginas 111, 113, 115-116 de la transcripción.
[39] Páginas 56 a 57 de la TPO.
[40] Página 98 de la TPO.
[41] Página 108 de la TPO.

impuesta. La prueba presentada y no controvertida demostró que el apelante elevó, rellenó y, depositó asfaltó en su propiedad sin tener los premisos requeridos, invadió la propiedad de la apelada, utilizó la verja de mampostería de la parte apelada como un muro de contención y dirigió las aguas de escorrentías superficiales a drenar hacia la parte trasera de dicha pared de mampostería. Sus actuaciones ocasionaron que las aguas de las escorrentías chocaran con el muro, que no estaba preparado para recibir peso, y que discurrieran por el muro y se acumularan frente al negocio de la apelada. El apelante puso en riesgo la seguridad de la parte apelada y la de sus empleados y clientes. Sus actos afectaron la verja de la apelada, debido al peso del relleno, el asfalto y el desvío de las escorrentías de las aguas. La verja de la demandante tiene una inclinación, humedad, la pintura dañada y calcificación en la parte inferior.

Por último, el apelante cuestiona los tres mil dólares ($3,000.00) de honorarios de temeridad. El error señalado no se cometió, porque si algo quedó evidenciado fue la temeridad del apelante. El señor Pomales ha insistido en litigar el pleito e incluso presentó una reconvención a sabiendas de que hizo las obras sin el permiso requerido. El apelante tenía pleno conocimiento de que había invadido la propiedad de la apelada, porque el señore Pichardo le informó en el año 2018 donde estaba la colindancia y le advirtió que continuaba rellenado y asfaltando iba a ocupar su propiedad. Su terquedad y contumacia han ocupado los recursos del tribunal y sometiendo a la apelada a los costos y molestias de un pleito que se inició hace más de cuatro (4) años. Aunque el apelante cuestionó la cantidad impuesta, a nuestro juicio, $3,000.00 es más que razonable.

El apelante no controvirtió la credibilidad que el foro escuchó y vio a los testigos declarar, adjudicó al ingeniero Antonio J. Jiménez

Quiñónez y al señor Steve Pichardo. Su representación legal no presentó ninguna evidencia que pudiera controvertir el testimonio y el informe del perito de la parte apelada. El apelante se limitó a declarar que tiró unas dos pulgadas de asfalto para cuadrar su terreno y a responsabilizar a la parte apelada porque pagó renta más de dos (2) años, a pesar de que tenía su negocio.[42]

**IV**

Por los fundamentos antes esbozados, se confirma la sentencia apelada.

Lo acordó el Tribunal y manda el Tribunal, y lo certifica la secretaria del Tribunal.

La Jueza Cintrón Cintrón concurre sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[42] Páginas 172 a 185 de la TPO.